United States District Court
District of Massachusetts

```
                                     )
Amber Rucker,                        )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )
                                     )   Civil Action No.
Harvard T.H. Chan School of Public   )   20-11761-NMG
Health et al.                        )
                                     )
          Defendants.                )
                                     )
                                     )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from claims of employment discrimination brought by Amber Rucker ("Rucker" or "plaintiff") against her former employer, President and Fellows of Harvard College ("Harvard" or "defendant").[1]  Rucker brings both federal and state law claims for discrimination on the basis of race and gender, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. ("Title VII"), M.G.L. c. 151B ("Chapter 151B") and M.G.L. c. 149 § 105A ("Chapter 149").

---

[1] Defendant contends that it is named incorrectly in the complaint as "Harvard T.H. Chan School of Public Health" and "Ariadne Labs" and that Ariadne Labs, a health system innovation center jointly operated and staffed by employees of both Harvard T.H. Chan School of Public Health and Brigham and Women's Hospital, is not an independent entity.

- 1 -

Pending before this Court is defendant's "partial motion to dismiss" the complaint for failure to exhaust administrative remedies to the extent it alleges hostile work environment claims (Docket No. 12).[2]  For the reasons that follow, that motion will be allowed.

## I. Background

Ms. Rucker is a Black woman who lives in Malden, Massachusetts.  She began her employment with Harvard in March, 2017, and remained so employed until she was "constructively terminated" in August, 2019.

In or about October, 2019, plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") and the Massachusetts Commission Against Discrimination ("MCAD") a charge of discrimination ("the Charge"), alleging that defendant

> denied [her] the opportunity for [job] reclassification in the appropriate time frame and salary which properly aligned with the awarded position because of [her] race.

The Charge contends, specifically, that Rucker's White counterparts were promoted in shorter time frames and received higher salaries than she did.  It makes no allegation, however, that plaintiff was subjected to any harassment or offensive conduct or comments based on her race.  In August, 2020, the EEOC dismissed her claims.

---

[2] The Court continues to be puzzled by "partial motions" to which movants seek more than partial resolution.

In September, 2020, Rucker filed a civil complaint with this Court, challenging the decision of the EEOC.  In the complaint, plaintiff re-asserts allegations relating to her job reclassification process and salary ("job status discrimination") and also raises, for the first time, claims of hostile work environment.  She states, in particular, that comments made and actions taken by her Director, Dr. Neel Shah ("Dr. Shah"), fostered an environment of "institutionalized racism" within her place of employment.  Although the complaint lists several of those comments and actions, not one was mentioned in the Charge.  Indeed, Dr. Shah himself was not referred to in the Charge by either name or title.

## II. **Motion to Dismiss**

Harvard contends that Rucker's complaint should be dismissed to the extent it alleges a "hostile work environment" because she failed to exhaust the administrative process as to those allegations.  Plaintiff responds that 1) she should not be limited to the allegations in the Charge which was filed pro se and 2) in any event, her hostile work environment allegations were preserved by the "scope of the investigation" rule because they ultimately raise the same issue as her original allegations, i.e. race discrimination.

**A. Legal Standard**

To survive a motion under Fed. R. Civ. P. 12(b)(6), the subject pleading must contain sufficient factual matter to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When rendering that determination, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011).  A court also may not disregard properly pled factual allegations even if actual proof of those facts is improbable. Ocasio-Hernandez, 640 F.3d at 12.  Rather, the relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw. Id. at 13.

**B. Application**

Both Title VII and Chapter 151B prohibit employers from discriminating against their employees on the basis of race.

42 U.S.C. § 2000e-2(a)(1); M.G.L. c. § 151B, § 4.  Those provisions may be violated based on "job status" discrimination and/or hostile work environment, two kinds of employment discrimination which are readily distinguishable and should be analyzed separately. Lattimore v. Polaroid Corp., 99 F.3d 456, 463 (1st Cir. 1996).

To recover for job status discrimination, an employee must show that some action was taken by the defendant that adversely affected the employee's job status, salary or benefits based upon her membership in a protected class. Lattimore, 99 F.3d at 463.  With respect to hostile work environment, on the other hand, an employee must show that defendant engaged in harassment or other abusive, offensive or humiliating conduct which was "sufficiently severe and pervasive to interfere with a reasonable person's work performance". Muzzy v. Cahillane Motors, Inc., 749 N.E.2d 691, 694 (Mass. 2001); see Prescott v. Higgins, 538 F.3d 32, 42 (1st Cir. 2008).

Before filing a civil suit in federal court on either ground, an employee must first exhaust the administrative process by setting forth the particulars of her claim in an administrative charge. Pelletier v. Town of Somerset, 939 N.E.2d 717, 727 (Mass. 2010) (as applied to claims under Chapter 151B); Jorge v. Rumsfeld, 404 F.3d 556, 564-65 (1st Cir. 2005) (as applied to claims under Title VII).  An administrative charge

filed by a pro se employee should be "liberally construed" but, nevertheless, must still "describe the essential nature of the claim and . . . identify the core facts on which it rests." Manning v. Abington Rockland Joint Water Works, 357 F. Supp. 3d 106, 114 (D. Mass. 2019) (quoting Powers v. Grinnell Corp., 915 F.2d 34, 38 (1st Cir. 1990)).

One exception to the exhaustion requirement is the "scope of the investigation" rule, which provides that

> a claim that is not explicitly stated in the administrative complaint may be asserted in the subsequent [civil action] so long as it is based on the acts of discrimination that the MCAD [or EEOC] investigation could reasonably be expected to uncover.

Pelletier, 939 N.E.2d at 727 (internal citations omitted). An investigation could reasonably be expected to uncover claims that "1) allege the same type of discrimination and 2) are based on the same type of conduct as the administrative charge". Perch v. City of Quincy, 204 F. Supp. 130, 133 (D. Mass. 2002).

This Court concludes that Rucker's new hostile work environment allegations fall outside the scope of the subject administrative investigation and, therefore, must be dismissed. Although, as with the Charge, the new allegations ultimately raise claims of race-based discrimination, they are grounded on a different kind of conduct and core set of facts which are readily distinguishable from the "job status" discrimination initially alleged. See Lattimore, 99 F.3d at 463 ("Hostile

environment harassment is readily distinguishable from job status discrimination . . . [and is] analyzed separately" (internal quotation marks and citations omitted)); Perch, 204 F. Supp. 2d at 133 ("[T]he [scope of the investigation] rule precludes a claimant from filing claims in court which allege different types of discrimination, or are based on materially different facts, from the administrative charge.").

Specifically, the factual allegations in the Charge are limited to 1) the slow pace in which Rucker was promoted as compared to her White colleagues and 2) her lower salary. None of the factual allegations therein describes or implies the existence of a hostile work environment at Rucker's place of employment. Unlike the complaint, for instance, there is no allegation in the Charge of any harassment or other abusive or offensive comments or conduct by Dr. Shah or anyone else at Harvard. Indeed, there is no mention at all of Dr. Shah in the Charge, either by name or title.

Accordingly, plaintiff cannot demonstrate that the MCAD or the EEOC was reasonably likely to uncover a potentially hostile work environment fostered by Dr. Shah during its investigation into Rucker's allegations of job status discrimination. See Patoski v. Jackson, 477 F. Supp. 2d 361, 363–64 (D. Mass. 2007) ("It cannot be assumed that the EEOC investigations are designed as fishing expeditions to uncover all possible transgressions,

especially if not alleged."). For that reason, plaintiff has failed to exhaust the administrative process with respect to her new hostile work environment allegations and those claims will therefore be dismissed. Nonetheless, plaintiff may still pursue her race discrimination claims to the extent they depend upon her alleged job classification and salary differential.

### ORDER

For the foregoing reasons, defendant's "partial motion to dismiss" the complaint (Docket No. 12) is **ALLOWED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated February 25, 2021