UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMBER RUCKER<br><br>              Plaintiff,<br><br>v.<br><br><br>PRESIDENT AND FELLOWS OF<br>HARVARD COLLEGE<br><br>              Defendant. | Civil Action No. 1:20-cv-11761-NMG |

## AMENDED COMPLAINT AND JURY DEMAND

### Parties

1. The Plaintiff, Amber Rucker (hereinafter "Ms. Rucker" or "Plaintiff"), is an individual who maintains a residence at 55 Lincoln Street, #2, Malden, Middlesex County, Massachusetts.

2. The Defendant, President and Fellows of Harvard College (hereinafter "School") maintains a business address of 90 Smith Street, Roxbury Suffolk County, Massachusetts.

### Facts

3. Ms. Rucker is Black.

4. Ms. Rucker is a former employee of the Defendant.

5. Ms. Rucker worked at Ariadne Labs, a joint health system innovation center of Brigham and Women's Hospital and the School, as part of its Delivery Decisions Initiative ("DDI") team.

6. Ms. Rucker was employed by the School from March 2017 to August 2019.

7. Ms. Rucker was employed by the School as a Project Coordinator.

8. Ms. Rucker worked as part of a team that researched the overuse of cesarean sections in childbirth.

9. Specifically, the DDI research focused on developing childbirth care solutions that promoted quality, dignity and racial equity in their centerpiece project "TeamBirth".

10. Dr. Neel Shah ("Dr. Shah") is an Assistant Professor of Obstetrics, Gynecology and Reproductive Medicine at the School and is the Director of the DDI at Ariadne Labs.

11. Dr. Shah fostered an environment of institutionalized racism on DDI and within the School.

12. For example, throughout October, November and December 2018, Ms.Rucker made the suggestion to increase the number of Black participants invited to the School's expert consultation.  Ms. Rucker rationalized the fact that the maternal health crisis affects Black women three to four times more than non-Hispanic white women, and so logically more Black individuals should be invited to participate.

13. Ms. Rucker's suggestion was dismissed and the School made no effort to increase Black participation / attendance.

14. The School's inaction had the effect of creating a hostile work environment for Plaintiff.

15. For example, Chanel Porchia-Albert ("Mrs. Porchia-Albert"), a Black woman who participated in the School's expect consultation meeting in January 2019 posed a question to the School, through Dr. Shah, as to how the proposed solution, "TeamBirth" worked to address racial disparities observed in maternal health given that the meeting participants and TeamBirth research sites were majority white.

16. Immediately following the meeting, Dr. Shah stated he would un-invite her from participating in future meetings – attempting to ostracize Mrs. Porchia-Albert from the program and signaling to his staff, including Ms. Rucker, that Black women are inferior.

17. In the January 2019 expert consultation meeting, only three Black experts, including Mrs. Porchia-Albert were invited to participate out of more than one hundred attendees.

18. As a Black woman, witnessing Dr. Shah mistreat Mrs. Porchia-Albert had the effect of creating a hostile work environment for Plaintiff.

19. For example, often and as recently February 2019, Dr. Shah stated Black women are "non-compliant patients" leading to their negative maternal health outcomes.

20. As the result of Dr. Shah's racist comments and overall demeaning attitude, Ms. Rucker complained to his Associate Director, Amber Weiseth ("Dr. Weiseth").

21. Dr. Weiseth, who had supervisory authority over Plaintiff, promised to investigate her complaint and speak to Dr. Shah about the issues.

22. On information and belief, no meaningful investigation was performed by anyone within the School, including Dr. Weiseth, and Dr. Shah continued to operate in a racist manner.

23. For example, Dr. Shah referred to the hospital primarily serving Black and brown patients as a "sandbox" to "play in" to "test" other hypotheses of the TeamBirth solution, as the other four sites primarily served white patients.

24. For example, often, and as recently as April 2019, Dr. Shah has stated that Black women are "aggressive" and "difficult to work with".

25. On another occasion, in April 2019 Dr. Shah spoke of fighting with another "woman of color", referring to Nicolle Gonzales, a Native midwife.

26. On another occasion, in May 2019 Timoria McQueen ("Mrs. McQueen"), a Black woman, was asked to be a panelist for a discussion at an ACOG forum. In preparing for the panel discussion, when Mrs. McQueen disagreed with an issue related to the panel, Dr. Shah effectively stated to Mrs. McQueen that, as a Black woman, she should simply be thankful to have been appointed but her opinion was not necessary.

27. Furthermore, Dr. Shah stated that Ms. McQueen was "combative" and if she did not adopt his ideas, he would have her removed from the panel.

28. As a Black woman, witnessing Dr. Shah mistreat of Mrs. McQueen had the effect of creating a hostile work environment for Plaintiff.

29. The net effect of the hostile, racist attitude by the leadership of the Initiative led to constant micro-aggressions by Caucasian employees towards Black employees, and specifically, Ms. Rucker.

30. Ms. Rucker experienced micro-aggressions and racially biased statements from her colleagues on a weekly, sometimes daily, basis up to her constructive termination.

31. For example, Ms. Rucker was discouraged from participating in the School's Diversity and Inclusion meeting by her former manager stating "make sure it does

not interfere with your work", although all Diversity and Inclusion meetings were held during lunchtime.

32. For example, during the hiring process of a research assistant, a DDI team member during a weekly team meeting stated "to create a more diverse candidate pool, we might have to lower the job requirements".

33. As a direct result, Ms. Rucker was thanked by Dr. Shah for not "aggressively responding" to her colleague for their racist comment.

34. The School hired a white woman to fulfill the research assistant role.

35. Furthermore, the Defendant discriminated against Plaintiff as it related to her job duties, pay, title and advancement.

36. Based upon Ms. Rucker's skill set, job duties and responsibilities, Ms. Rucker's job title should have been Senior Project Coordinator from roughly the date of her hire.

37. While the School ultimately reclassified her job title to Senior Project Coordinator, it took the School over two years to do so.

38. However, during her time with the School, Ms. Rucker's white colleagues had their jobs reclassified or were promoted within a year or less.

39. Furthermore, most of Plaintiff's white comparators began their employment with the School after Ms. Rucker did.

40. Additionally, at the time of her job reclassification a 15% raise was recommended by Plaintiff's supervisor.

41. When the reclassification was finally approved, only a 7% increase was awarded.

42. On information and belief, when Ms. Rucker's white colleagues earned job reclassifications or promotions, they were awarded higher than a 7% salary increase.

43. On information and belief, Ms. Rucker is paid less than her male colleagues for substantially similar work.

44. On information and belief, Ms. Rucker is paid less than her white colleagues for substantially similar work.

45. Ms. Rucker complained about her salary being too low given the high level of responsibility as a Senior Project Coordinator, but her complaint was dismissed by the School.

46. During a discussion regarding her dissatisfaction with the salary increase with former Chief Operations Officer, Catherine Breen ("Mrs. Breen"), the Plaintiff mentioned a white male comparator who had been promoted multiple times. Ms. Breen responded by saying the School wanted to "retain him and plus he has a family to support". Ms. Breen offered the Plaintiff mentorship and assistance in finding other positions outside of the School, if Plaintiff needed to make more money.

47. Dr. Weiseth encouraged the mentorship between the Plaintiff and Ms. Breen, stating: "she holds the relationship with the School's Human Resources (HR) department" or words to that effect.

48. Furthermore, promotions were not based on a meritocracy for the Plaintiff's male white comparators.

49. Ms. Rucker ultimately aspired to be a Project Manager.

50. The School was aware of Ms. Rucker's aspirations.

51. Ms. Rucker witnessed her white comparators receive promotions in under a year on multiple occasions while employed by Defendant.

52. When Ms. Rucker informed the School that she wanted to become a Project Manager, she was told she must wait at least one year before she would become eligible.

53. Specifically, Ms. Rucker was told that she needed to have a year in each job classification before one could be promoted or reclassified.

54. This directly contradicted the Ariadne Labs Promotion and Reclasses Process Revision Policy which states "{i}t is important to note that promotions and reclasses are never based on years of service in a particular role."

55. In addition, Ms. Rucker observed her white comparators who were promoted and/or reclassified without having a year in their current job classification.

56. However, the School committed fraud when Ms. Rucker was deceitfully listed as a Project Manager on an awarded grant proposal with commensurate salary despite never being promoted to Project Manager. As a result. the School was awarded the requested amount which listed Ms. Rucker's salary as higher.

57. As a result of the School's continued racism, Ms. Rucker was constructively terminated.

58. Plaintiff has exhausted her administrative remedies with the Massachusetts Commission Against Discrimination and the Equal Employment Opportunity Commission.

Causes of Action

(Each Cause Of Action Incorporates Therein
All Of The Paragraphs Set Forth, Hereinabove.)

FIRST CAUSE OF ACTION – RACE DISCRIMINATION IN VIOLATION OF MASS. GEN. LAWS CHAPTER 151B §1, et. seq.

59. This is a cause of action against the Defendant for race discrimination in violation of Massachusetts General Laws Chapter 151B § 1, et. seq.

60. The Plaintiff is Black.

61. The Defendant is aware that Plaintiff is Black.

62. The Plaintiff was subjected to race discrimination, which had the purpose of creating a hostile and humiliating work environment, which interfered with the Plaintiff's ability to do her job.

63. The Defendant treated Plaintiff's Caucasian comparators more favorably than Plaintiff.

64. The Defendant terminated Plaintiff because of her race.

65. As a result of the Defendant's conduct, the Plaintiff has suffered damages.

SECOND CAUSE OF ACTION –RACE DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 USC CHAPTER 2000e et seq.

66. This is a cause of action against the Defendant for race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Chapter 2000e et seq.

67. The Plaintiff is Black.

68. The Defendant is aware that Plaintiff is Black.

69. The Plaintiff was subjected to race discrimination, which had the purpose of creating a hostile and humiliating work environment, which interfered with the Plaintiff's ability to do her job.

70. The Defendant treated Plaintiff's Caucasian comparators more favorably than Plaintiff.

71. The Defendant terminated Plaintiff because of her race.

72. As a result of the Defendant's conduct, the Plaintiff has suffered damages.

### THIRD CAUSE OF ACTION –VIOLATION OF MASS. GEN. LAWS CHAPTER 149 §105A – MASSACHUSETTS EQUAL PAY ACT

73. This is a cause of action by Plaintiff against the Defendant for violation of the Massachusetts Equal Pay Act, Massachusetts General Laws Chapter 149 § 1105A.

74. The Defendant paid the Plaintiff less than her male comparators for comparable work.

75. As a result of the Defendant's conduct, the Plaintiff has suffered damages.

*The Plaintiff demands a jury trial on all triable issues.*

WHEREFORE, the Plaintiff hereby requests that this Honorable Court grant the following relief:

1. Judgment against the Defendant;

2. Attorney's fees, costs, and expert witness fees;

3. Compensatory damages for emotional distress;

4. Punitive damages pursuant to MGL c. 151B, § 9 and 42 U.S.C. Chapter 2000e et seq.;

5. Double damages pursuant to the Massachusetts Equal Pay Act;

6. Pre-Judgment and Post-Judgment Interest, and

7. Such other relief as the Court deems just and fair.

May 17, 2021									The Plaintiff,
											Amber Rucker,
											By her attorney,


											_____
											Suzanne L. Herold (BBO# 675808)
											Herold Law Group, P.C.
											50 Terminal Street
											Building 2, Suite 716
											Charlestown, MA 02129
											(617) 336-7196 (t)
											(617) 398-2730 (f)
											suzie@heroldlawgroup.com