UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AMBER RUCKER,<br><br>   Plaintiff,<br><br>v.<br><br>PRESIDENT AND FELLOWS OF HARVARD COLLEGE<br><br>   Defendant. | Case No. 1:20-cv-11761-NMG |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Amber Rucker ("Plaintiff" or "Rucker") has brought an action against her former employer, the President and Fellows of Harvard College alleging race discrimination in violation of M.G.L. c. 151B (Count I), race discrimination in violation of Title VII of the Civil Rights Act of 1964 *Count II) and violation of the Massachusetts Equal Pay Act (Count III).   The Plaintiff respectfully requests that the Defendant's Motion for Summary Judgment be denied in its entirety.

**STATEMENT OF FACTS**

The Plaintiff relies on and incorporates herein the Parties' Rule 9A(b)(5) Statement of Material Facts.

**ARGUMENT**

I.      Standard of Law;  Rule 56 Motions in Employment Discrimination Cases Must Be Heavily Scrutinized and Rarely Granted.

It is well recognized that courts disfavor summary judgment in employment discrimination cases. Bulwer v. Mount Auburn Hospital, 473 Mass. 672, 689 (2016).  "In cases involving employment discrimination, a defendant employer faces a heavy burden if it seeks to obtain summary judgment: summary judgment is disfavored in discrimination cases based on disparate treatment because the question of the employer's state of mind (discriminatory motive) is 'elusive and rarely is established by other circumstantial evidence." Sullivan v. Liberty Mutual Insurance Co., 444 Mass. 34 (2005) *citing* Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 439 (1995) (emphasis added). This requires "*the jury* to weigh the credibility of conflicting explanations" of the adverse decision.  Sullivan at 39 (internal citations omitted) (emphasis added).

Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Mass. R. Civ. P. 56(c).  A "genuine" issue means that the evidence would permit a reasonable fact finder to resolve the point in favor of the nonmovant.  Mulvihill v. The Top-Flight Golf Co., 225 F.3d 15, 19 (1st Cir. 2003).  A "material fact" is one that might affect the outcome of the suit under the applicable law. *Id*.  The trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, including all reasonable inferences in that party's favor." Griggs Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990).

When reviewing a summary judgment motion in employment discrimination cases, all facts must be considered in their light most favorable to the nonmoving party, drawing all reasonable inferences in Plaintiff's favor. Id. at 39. 365 Mass. 824 (1974); Blare v. Husky Injection

Molding Sys. Boston, Inc., supra at 438. The SJC reaffirmed the language of its decision in Sullivan once again in Bulwer v. Mt. Auburn Hospital, 473 Mass. 672, 680 (2016).

II.     None of Plaintiff's Claims Are Time Barred

A plaintiff who demonstrates a pattern of discrimination over a period of time may seek damages for conduct that began before the 300-days limitation period under Chapter 151B, provided that at least one "anchoring" incident of misconduct occurred within the limitations period. Cuddyer v. The Stop Shop Supermarket Co., 434 Mass. 521 at 540 (2001). Under this approach, the limitations period begins to run when the employee knew or reasonably should have known that her workplace was discriminatory and unlikely to improve. Id.

The approach to the continuing violation doctrine in Massachusetts "allows a plaintiff to litigate otherwise time-barred incidents unless her delay in filing her complaint was objectively unreasonable." Morin v. Murida Furtniture Co., 2009 Mass. Super. LEXIS 401, *11-12 (Sept. 30, 2009), *citing Cuddyer*, 434 Mass. at 539-40. Courts focus on "the plaintiff's knowledge of the hopelessness of her work environment." Cuddyer, 434 Mass. at 540.

This case presents a perfect example of the importance of the continuing violation doctrine. Plaintiff did not sit idly by while her white comparators enjoyed raises and promotions, and *then* filed this lawsuit out of the blue. On the contrary, she did exactly what she was supposed to do – what courts admonish employees who feel victimized by their employers to do; she raised her concerns internally in an effort to resolve them amicably, without litigation. *See* Faragher v. City of Boca Raton, 524 U.S. 775, 806-807 (1998) (explaining that a "victim has a duty to use such means as are reasonable under the circumstances to avoid or minimize the

damages"). When Plaintiff could not address the disparate treatment with Human Resources and her supervisors, she filed at the EEOC and MCAD and then removed to this Court.

The Defendant's reliance on Ocean Spray and its progeny is wholly misplaced as the language surrounding that case involved a claim of handicap discrimination and the employer's failure to provide a reasonable accommodation. Ocean Spray, 532 Mass. at 645. Ocean Spray held that when an employer responds to a request for a reasonable accommodation with equivocal action or inaction, the limitations period begins to run when the employee knew or reasonably should have been aware that the employer was unlikely to afford him the reasonable accommodation. Id.

The Defendant plainly overlooks the explicit reference in Ocean Spray's holding to the reasonable accommodation context. Id.; *see* Commonwealth v. H&R Block, Inc., 2008 Mass. Super. LEXIS 427, *31 (Nov. 25, 2008) (Gants, J.) (describing Ocean Spray as applying to the reasonable accommodation context only). Further, the Defendant's argument, if accepted, would put all employees subjected to race discrimination in a Catch-22: if accepted an employee would be required to report the behavior and try to correct it at an internal level, while subsequently be required to initiate a legal action within 300 days of the harassment or be timed-out.

Therefore, given that Plaintiff worked internally with her employer to attempt to resolve her issues, and, only after realizing her internal efforts were futile, and only after being forced into a resignation due to the race discrimination, did Plaintiff file. Her claims. Coupled with the Court's analysis in Faragher and the duty draw all reasonable inferences in the record to Plaintiffs' favor, the continuing violation doctrine must apply in this circumstance.

III.    Plaintiff Experienced the Adverse Actions of Slower Promotions, a Substantially Lower Percentage of Salary Increase Compared to Her White Comparators and Constructive Termination

Defendant asserts that Plaintiff cannot establish a *prima facie* case of disparate treatment race discrimination because there is no adverse action to Plaintiff. This is false, because Plaintiff can show the adverse actions of being promoted more slowly than her white comparators, being held to a different promotional standard than her white comparators, (SOF 22, 26, 30, 48) and being awarded a significantly smaller increase in overall salary after promotion than her white comparators (SOF 48). While Defendant states that Plaintiff cannot establish promotional and pay differential, that is not the case.

It is well established that the plaintiff's *prima facie* case is "not intended to be onerous." Sullivan v. Liberty Mutual Insurance, 444 Mass. 35 at 45 (2005). It is meant to be a "small showing" that is "easily made." Id. Once the *prima facie* case is established, the plaintiff is entitled to a presumption of discrimination. Trustees of Health and Hospitals of City of Boston, Inc. v. Massachusetts Commission Against Discrimination, 449 Mass. 675, 687 (2007).

   a.   Slower Reclassifications and Lower Percentage of Salary Increases

Using data provided to Plaintiff by Defendant, (Defendant's Exhibit 8, Exhibit A) Plaintiff analyzed the data and imported her findings into a separate spreadsheet. SOF 48, Plaintiff's Exhibit 4, Tab A. The document makes clear that it took Harvard 24 months to promote Plaintiff and she was eventually awarded a 6.6% overall increase in pay. Id. Plaintiff was then told that, per policy, she was ineligible for another reclassification or promotion for one year. SOF 34.

At the relevant time, Employee A, who is white, was promoted once in 2017 with a 22.6% pay increase, twice in 2018 with pay increases of 1.7% and 18.09%, respectively, and

again in 2019 with a 16.7% increase in salary. SOF 48.

Also at the relevant time, Employee B was hired as a Project Coordinator, Grade 54, with a starting salary of $58,136 annually. Employee B is white. Employee B's starting salary was higher than Plaintiff's. Id.

Also at the relevant time, Employee C was reclassified to the title of Events Coordinator, Grade 54, with a starting salary of $61,000 annually. Employee C is white. Employee C's starting salary was higher than Plaintiff's. Id.

Also at the relevant time, employee D was reclassified from a Project Coordinator 1, Grade 54 to a Senior Project Coordinator, Grade 55. This individual is Plaintiff's most "apples to apples" comparator. Employee D was reclassified after only 15 months, while Plaintiff had to wait 24 months. Employee D was awarded an 11.22% pay increase, whereas Plaintiff was awarded only a 6.6% pay increase. Employee D is white. Plaintiff is Black. Id.

Finally, during the relevant time period, Employee F went from a Coordinator 1, Grade 54 to a Senior Operations Coordinator, in only one year. Employee F's salary increased 10.57%. Employee F is white. Id.

The record is undeniably clear that white employees were promoted faster than Plaintiff, that white employees were not held to the one-year standard before being eligible for another promotion that Plaintiff was, and that white employees were awarded a significantly higher percentage in raises than Plaintiff. SOF 34, 48. On top of the analysis speaking for itself, two Ariadne managers (Kizzy Scott and Justine Kahn) and Emily George testified that the Defendant's slowness in reclassifying Plaintiff was due to racial bias, that Defendant's statement that Plaintiff would be ineligible for a second reclassification or promotion until a year passed was due to racial bias and the lower overall increase in salary was due to racial bias. SOF 7, 9-

10, 18-19, 21-22, 24, 26, 28, 30, 34, 39-41, 48.

      b.   <u>Comparators Are No Longer "Apples to Apples"</u>

This Court need not limit itself to "apples to apples" comparators as Defendant suggests. This former standard, also known as the "all relevant respects" test was rejected by the Supreme Court in <u>Sprint / United Management Co. v. Mendelsohn</u>, 552 U.S. 379, 387 (2008). The Court found that employees could be supervised by different managers and work in different departments and still be considered comparators. Similarly, the Court in <u>Young v. United Parcel Service</u> wrote that a plaintiff's burden to show discrimination does not require her to "show that those whom the employer favored and those whom the employer disfavored were similar in all but the protected ways." <u>Young v. United Parcel Service</u>, 575 U.S. 206, 228 (2015).

Rather, "the test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated… Exact correlation is neither likely nor necessary…" <u>Trustees of Health & Hosps. of Boston, Inc. v. Mass. Comm. Against Discrimination</u>, 449 Mass. 675, 682 (2007); <u>Velez v. Thermo King de Puerto Rico</u>, 585 F. 3d 441, 451 (1st Cir. 2009). Plaintiff is using the positions of Coordinator or Staff Assistants to draw her comparators. That those individuals ended up with titles that may no longer make them "apples to apples" is exactly her point – these white employees started at her same Grade (and earning more than she did upon hire) but, by the time she left had been reclassified multiple times over, promoted, awarded higher salaries, etc. and cannot be considered the same as her in all relevant respects because of the overwhelming amount of opportunity given to them, versus Plaintiff.

      c.   Constructive Termination

With respect to Plaintiff's claim for constructive termination, it is an issue of material fact as to whether Defendant's acts forced Plaintiff to leave her position at Ariadne. While Defendant is free to take the position that Plaintiff left voluntarily, it is not disputed that termination (constructive or otherwise) is an adverse action. Ritchie v. Department of State Police, 60 Mass. App. Ct. 655, 664 (2004) In Ritchie, the Court opined that a Plaintiff need only prove that [he] reasonably and in good faith believed that the employer was engaged in wrongful discrimination, not that the employer actually engaged in wrongful discrimination. Here, when asked to describe the retaliation and the circumstances surrounding her constructive discharge, Rucker stated, under oath to the EEOC:

> "I believed I was being discriminated against in the terms and conditions of my employment; but I was compelled to leave when I was told it would be another year to become a project manager because you had to have a year in each job classification before you could be promoted or reclassified. This directly contradicted the written Ariadne Labs Promotions and Reclass Process Revision Policy which states,"[i]t is important to note that promotions and reclasses are never based on years of service in a particular role." In addition, I observed some White individuals who were promoted and / or reclassified without having a year in their job classification.".

Defendant Exhibit 1; SOF 34.

Based on this statement alone, Rucker has established, through the direct evidence of her own sworn statement and the corroboration of this statement by Kizzy Scott, plus the corroboration from her then manager Justine Kahn that Defendant had no intention to promote Plaintiff again, and would only promote "strong" candidates, and the overall negative effect it was taking on Plaintiff's health that her work environment was "so intolerable" that her

"decision to resign was void of choice or free will". EEOC v. Kohl's Dep't Stores, Inc., 774 F.3d 127, 134 (1st Cir. 20144). SOF 34,38.

IV.     Plaintiff Can Show Pretext

Plaintiff can establish that Defendant's actions are pre-textual on the basis of timing. While the Defendant asserts that Plaintiff cannot show pretext because "Plaintiff has offered no evidence of discriminatory animus on the part of decision makers beyond mere speculation that her white colleagues were being reclassified at a higher rate that she was." *See* Defendant's Brief, page 12. From looking at the record, Plaintiff has established that she was promoted at a slower rate and her overall percentage increase in salary was far lower than her white comparators. SOF 48.

The record is also clear that when Plaintiff was eventually reclassified from Project Coordinator, to Senior Project Coordinator, Defendant was already having her do the work of a Project Manager, which would have been the next reclassification / promotion for Plaintiff. The record is not disputed that Plaintiff was listed as Project Coordinator for at. Least one project at Ariadne. SOF 37. However, Plaintiff was then told she would have to wait one year before being eligible for another promotion – something that her white comparators were not held to. SOF 34. Then, even though Plaintiff was adequately performing the functions of a Project Manager, it was communicated to Plaintiff by her boss, Justine Kahn, that Amy Lieb would not promote Amber because, despite already doing the job of Project Manager, she was "not ready". SOF 38.

The record is clear that Plaintiff's work was done well enough that she deserved the reclassification. The Defendant cannot, in hindsight, state t hat Plaintiff did not somehow deserve the reclassification when the records plainly says otherwise. In fact, Grace Galvin

pushed for a 15% salary increase because she knew it was possible and because she thought Plaintiff deserved it. SOF 20, 48. However, Defendant dragged out the process for months and then awarded Plaintiff only a 6.6% increase – a percentage wildly below what her white comparators were being given. SOF 20, 22, 25, 26, 30, 48. The record reflects that when others were promoted or reclassified, they were awarded double the percentage of salary increase that Plaintiff was awarded. While Plaintiff asked for a 15% increase, she was awarded only 6.6%, a percentage much lower than given to the white comparators who were being promoted or reclassified at that time. SOF 48.

      Plaintiff's claims are about overt and covert acts of racism. The Court in Thomas v. Eastman Kodak, 183 F.3d 38, 42 (1st Cir. 1999) addressed a similar issue when deciding claims that touch upon the concept of systemic or institutionalized racism. That Court held that "[P]rohibition against 'disparate treatment because of race' extends both to employer acts based on conscious racial animus and to employer decisions that are based on stereotyped thinking or other forms of less conscious bias." Similarly, Plaintiff in this matter come before this Court with precisely the type of evidence that supports discrimination as discussed in Luciano v. Coca-Cola Enters., 307 F. Supp. 2d 308 (D. Mass. 2004), where evidence of workforce composition supported a race discrimination claim. Id. at 322. The plaintiff, a top salesperson, alleged that she was denied mentoring and the staff necessary to fulfill the increased demands the defendants placed on her. Id. She presented evidence of the "dearth of women at Coca-Cola NE in executive positions." Id. There, the court found this evidence sufficient to send the claim to the jury.

      While this Court dismissed Plaintiff's hostile work environment claim for failure to exhaust her administrative remedies at the EEOC / MCAD, the record is clear that Ariadne Labs was charged with racial bias, and that bias cannot be ignored here when considering why the

undisputed record shows that Plaintiff was promoted slower than her white colleagues and then awarded significantly less in salary adjustments.  SOF 7, 9-10, 18-19, 21-22, 24, 26, 28, 30, 34, 39-41, 48.  The testimony from Kizzy Scott, Emily George and Justine Kahn make it clear that racism played a part in the decision making that went on during the time Plaintiff was employed.  Id.  The Court is free to, and must, consider that the record reflects racial bias, which trickled into Defendant's mistreatment of Plaintiff in its slowness to reclassify her, award her a significantly smaller percentage of salary increase, and hold her to an unwritten "one promotion per year" rule that it did not impose on its white workers. The Defendant's attempt to isolate Plaintiff's comparators, present data that is not properly analyzed in the light most favorable to Plaintiff and portray Plaintiff as someone who "was not ready" for promotion at the rates her white comparators were, and present this information as actions that cannot be contextualized as race-based animus is improper.  See O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001).   Massachusetts Courts agree.  See Pelletier v. Town of Somerset , 458 Mass. 504, 523, 939 N.E.2d 717 (2010);  Sauer v. Belfor USA Grp., Inc., 205 F.Supp.3d 209 (D. Mass., 2016) recognizing that the fact that not all of the alleged conduct was aimed directly at plaintiff does not defeat plaintiff's claim that she endured a hostile work environment.

Dated: March 25, 2022

For Plaintiff,

 /s/ Suzanne L. Herold
Suzanne L. Herold (BBO# 675808)
Herold Law Group, P.C.
50 Terminal Street
Building 2, Suite 716
Charlestown, MA 02129
(617) 944-1325 (t)
(617) 398-2730 (f)
suzie@heroldlawgroup.com

CERTIFICATE OF SERVICE

I, Suzanne L. Herold, hereby certify that this document was served upon Defendant's counsel via electronic filing on March 25, 2022.

*/s/ Suzanne L. Herold*
_____
Suzanne L. Herold