## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **AMBER RUCKER,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**PRESIDENT AND FELLOWS OF HARVARD COLLEGE**<br><br>        **Defendants.** | **Case No. 1:20-cv-11761-NMG**<br><br>**LEAVE TO FILE GRANTED ON 4/15/2022** |

## DEFENDANT'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant President and Fellows of Harvard College ("Harvard"), hereby submits this Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgement ("MSJ"). As explained in more detail below, Plaintiff's Opposition is an attempt to distract the Court from the undisputed, objective evidence that Harvard has produced in this case.  The reclassification and pay data for Ariadne workers employed by Harvard[1], including each of those identified by Plaintiff as purported comparators (SOF ¶45), reveals that: (1) Plaintiff was promoted within a timeline that was faster than several of her white colleagues, and at all relevant times was one of the highest, if not the highest, paid Harvard employees at Ariadne at her grade level. (MSJ, p. 6-7, SOF ¶ 48, Pichette Decl. Exhibit H, No. 8 and Revised Exhibit A).

**I.      In An Attempt to Create a Disparity That Does Not Exist, Plaintiff Relies on Misstatements or Mischaracterizations of the Evidence**

---

[1] Ariadne is jointly operated by Harvard School of Public Health and Brigham and Women's Hospital ("BWH"). Plaintiff implies that Harvard and BWH are joint employers. Harvard does not agree that Plaintiff has established any evidence to support this claim, or that it is relevant to the claims currently at issue in this case. However, even if she had, any impact to an employee's rate of promotion or pay based solely on their status as a BWH or Harvard employee, that impacted both white and Black employees, would not lead to an inference of racial or other unlawful bias. Further, Plaintiff has provided no evidence that she was paid less than or promoted at a slower rate than BWH employees who worked at Ariadne. Notably, Plaintiff failed to subpoena any documents from BWH.

In reality, the undisputed evidence reflects the following with respect to Plaintiff's colleagues:

(1) Employee A was not "promoted" in 2017 or in 2018. His position was reclassified once during Plaintiff's employment at Harvard, in July 2019, in a rare situation in which the Harvard School of Public Health concluded that the advertised position—which Employee A sought and received—had been misclassified at the outset. (SOF ¶ 48(l)-(o)). On every other occasion referenced by Plaintiff, Employee A applied for (and ultimately received) an independently posted job, that would have been filled by another employee if Employee A had not applied for and received the position. (*Id.*) This process is distinct from the reclassification process—in which Harvard essentially upgrades an employee's existing position into a higher salary and/or grade (*id.* ¶ 8)—and as noted in Harvard's brief, Plaintiff never applied to another position at Harvard (*id.* ¶ 41).

(2) Employee B was <u>not</u> hired by Harvard with a starting salary of $58,136. (*Id.* ¶ 48(i)). Employee B transferred to Ariadne from another position at Harvard in October 2017. (*id.*) Further, Employee B worked a 40-hour per week schedule whereas Plaintiff worked a 35-hour per week schedule. (*Id.* ¶ 48(c)). In this capacity, Employee B's hourly salary of $27.95 was essentially identical to Plaintiff's starting hourly salary of $29.76, and lower than Plaintiff's $30.26 hourly salary that Plaintiff was receiving at the time Employee B transferred to Ariadne. (*Id.*) Employee B then spent the next two and a half years in the same position without a reclassification or significant pay increase. (*Id.* ¶ 48(i)). In contrast, Plaintiff's position was reclassified within a two-year period, and at the time of her resignation, Plaintiff was earning $5.57 cents per hour more than Employee B. (*Id.* ¶ 48(c)).

(3) <u>Employee C</u> is not white. She is, like Plaintiff, a <u>Black woman</u>, and a long time Harvard

employee who transferred to Ariadne from another role at Harvard. (Pichette Decl. <u>Exhibit</u>

<u>H</u>, *Harvard's Revised Responses to Plaintiff's Interrogatories*¸ No. 8 and Exhibit A.)

(4) <u>Employee D</u> also transferred to Ariadne from another position at Harvard. (*Id.*) By the time

she was reclassified, Employee D had been in her position as Project Coordinator at Harvard

for "2.75" years, almost a year <u>longer</u> than Plaintiff was at Harvard, before her position was

reclassified. (SOF ¶ 48(h)). Further, although the <u>percentage</u> of Employee D's increase was

higher than Plaintiff's, Plaintiff's starting salary was substantially higher than the salary

earned by Employee D in the same position (a position she had worked in longer than

Plaintiff) and, despite the percentage of Employee D's increase, her new salary as a Grade 55

employee was still approximately $3,000 per year lower than Plaintiff's salary as a Grade 55

employee. (*Id.* ¶ 48(b)-(c)). As noted in the SOF, when an employee is reclassified, the Job

Review Committee ensures that the employee's salary is in line with other employees in the

same department and Grade level. (*Id.* ¶ 28). When an employee with a lower base salary

receives a higher percentage salary increase, the disparity is designed to keep or bring their

salaries in line with the salaries of other Grade 54 or 55 employees, like Plaintiff. (*Id.*)

(5) Similarly, while <u>Employee F</u> received a slightly higher increase, his salary as a Grade 54

employee was lower than Plaintiff's as a Grade 54 employee and his salary as a Grade 55

employee was lower than Plaintiff's as a Grade 55 employee. (*Id.* ¶ 48(a); Pichette Decl.

<u>Exhibit H</u>, *Harvard's Revised Responses to Plaintiff's Interrogatories*¸ No. 8 and Exhibit A).

Ultimately, Plaintiff is able to identify one white employee who was reclassified from a

Grade 54 to a Grade 55 position after serving in their positions for a shorter time period than

Plaintiff (who was reclassified after 2 years): Employee F, who reported to a different set of

managers, performed different work, and had a uniformly strong review, and was reclassified after one year. (SOF ¶ 48(d), (g), (k)). However, Plaintiff ignores the white employees who served in their positions for a longer period of time than Plaintiff before they were reclassified: including Employee D (2.75 years), whom Plaintiff describes as her "most apples to apples comparator", Employee G (2.17 years), and Employee B (at least 2.5 years).  Again, at the time of her resignation, Plaintiff was the <u>highest paid</u> Grade 55 employee at Ariadne.

## II.    Mischaracterization of Testimony of BWH Employees Kizzy Scott, Justine Kahn, and Emily George

Plaintiff relies heavily on the deposition testimony of Kizzy Scott, Justine Kahn, and Emily George to support her claim that Plaintiff was subjected to adverse action in comparison to her white colleagues. At the outset, each of these individuals was employed by BWH, not Harvard, in the relevant time period (George Dep. p. 43, Scott Dep. p. 8-9, Kahn Dep. p. 10). They each testified that they had no personal knowledge of Harvard employees' individual salaries or actual rates of promotion, and had no meaningful involvement in Plaintiff's reclassification. (George Dep. p. 20, 46-48 (admitting she has no "insight into the promotion process for any of the [white employees she believed were promoted at a faster rate than Plaintiff]" or their salary before or after their alleged promotion" or <u>opportunity to evaluate the quality of Plaintiff's work</u>); (Scott Dep. p. 47-49 (acknowledging that she is not aware of the salary of other Ariadne employees); p. 23-25 (stating that while she believed white employees were "possibly" promoted at a faster rate than Plaintiff she could not recall which colleagues were promoted at which time), p. 19-20 (noting that if Plaintiff had questions about the reclassification process she would have recommended Plaintiff talking to her hiring manager or immediate supervisor about steps to take for advancement as a <u>Harvard</u> employee); (Kahn Dep. p. 17 (noting Plaintiff was promoted "right before" Kahn started at Ariadne); p. 18-19 (acknowledging she did not know whether

4

Plaintiff's pay was comparable to other Ariadne employees). For these reasons, speculation by these witnesses about the timeline for Plaintiff's reclassification or her rate of pay, absent evidence of actual bias, is purely speculative, and cannot be used to create a genuine dispute with regard to the payroll data submitted by Harvard or defeat summary judgment. *Cordero-Soto v. Island Finance, Inc.*, 418 F.3d 114, 120 (1st Cir. 2005) (holding affidavit that provides "no basis for personal knowledge" will not be considered in opposition to motion for summary judgment); *Newell v. Celadon Security Services, Inc.*, 417 F.Supp.2d 85, 99 (D. Mass. 2006) (*citing Fennell v. First Step Designs, Ltd.*, 83 F.3d 526 (1st Cir. 1996) (holding that, to the extent a plaintiff's subjective belief is contradicted by the undisputed evidence presented by the employer, her conclusion, based solely on "improbable inferences, and unsupported speculation". . . is insufficient to overcome a motion for summary judgment").[2]

### III.   Plaintiff Has Waived Any Argument Regarding Her Claims Under the Massachusetts Equal Pay Act

Plaintiff did not respond to Harvard's motion to dismiss her claims under the Massachusetts Equal Pay Act, and therefore waives this claim. *Dahua Tech. USA Inc. v. Feng Zhang*, 988 F.3d 531, 538-539 (1st Cir. 2021) (holding that litigant who failed to raise argument in opposition to motion for summary judgment was "not enough to preserve the issue.")

### IV.   Plaintiff Was Not Constructively Discharged, Nor is She Alleging Retaliation

Plaintiff misapplies the holding of *Ritchie v. Dept. of State Police*, 60 Mass.App.Ct. 655 (2004): in that case, the court held that a litigant's subjective belief that she had engaged in protected activity was enough to support a claim of retaliation. *Id.* at 664. Plaintiff has not alleged a claim of retaliation in this case, nor would the evidence support such a claim.

---

[2] Additionally, Plaintiff has grossly mischaracterized or overstated the testimony of these witnesses. For example, Ms. Kahn attributed "favoritism" at Ariadne to management's preference for employees who worked in research roles as opposed to project management roles (Plaintiff's position). Kahn Dep. p. 19-20.  She noted specifically that she had never witnessed Plaintiff being subjected to racial discrimination. *Id. 23.*

Respectfully submitted,

**PRESIDENT AND FELLOWS OF
HARVARD COLLEGE,**

By its attorneys,


*/s/Alexandra L. Pichette*
_____
Robert P. Joy, Esq. (BBO #254820)
Alexandra L. Pichette, Esq. (BBO #697415)
Morgan, Brown & Joy, LLP
200 State Street, 11th Floor
Boston, MA 02109
(617) 523-6666
rpjoy@morganbrown.com
apichette@morganbrown.com

Dated: April 25, 2022

**CERTIFICATE OF SERVICE**

I, Alexandra Pichette, hereby certify that on April 25, 2022, a copy of the foregoing document, filed through the ECF system, will be served on all parties as provided by the Notice of Electronic Filing (NEF).


*/s/Alexandra L. Pichette*
_____
Alexandra L. Pichette