United States District Court
District of Massachusetts

|  |  |  |
|---|---|---|
| Amber Rucker, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. |
| President & Fellows of Harvard College, | ) | 20-11761-NMG |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case concerns claims of employment discrimination brought by Amber Rucker ("Rucker" or "plaintiff") against her former employer, President and Fellows of Harvard College ("Harvard" or "defendant"). Rucker asserts federal and state law claims for discrimination on the basis of race and gender, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. ("Title VII"), M.G.L. c. 151B ("Chapter 151B") and M.G.L. c. 149, § 105A ("the Equal Pay Act").

Pending before the Court is Harvard's motion for summary judgment on all claims (Docket No. 26). For the reasons that follow, that motion will be allowed.

I.  **Background**

   **A. Facts**

Plaintiff is a Black woman who resides in Malden, Massachusetts. She was hired by Harvard in March, 2017, for a one-year term position as a "Project Coordinator I" on the Delivery Decisions Initiative team at Ariadne Labs ("Ariadne"), a research center operated jointly by Harvard and Brigham & Women's Hospital ("Brigham").[1] The Delivery Decisions Initiative team focused its work on improving the safety and affordability of care for mothers and babies across disparate and complex health systems. As a Project Coordinator I, plaintiff was responsible for administrative tasks including, inter alia, helping to develop and maintain program materials and assisting with project plans.

Each "clerical or technical" position at Harvard, such as Project Coordinator I, is assigned a job title and classified at one of ten salary grades. Each grade corresponds to a salary range set in consideration of, inter alia, salaries for similar positions within the relevant labor market and budgetary constraints. When plaintiff was hired, her salary grade was 54. She was paid an hourly wage of just under $30 and worked 35

---

[1] Plaintiff's term of employment was subsequently extended several times, ultimately through March, 2020, although, as detailed below, she resigned well before that date.

hours per week, for total annual compensation of approximately $54,000.

The salary of a Harvard employee, such as plaintiff, may be increased in one of four ways. First, her position may be reclassified—that is, assigned a new title and salary grade—if such an adjustment is warranted due to an increase in her job responsibilities and skills. Reclassification is often, though not always, accompanied by an increase in pay. Second, she may be promoted. As described by the parties, promotion entails assignment to a newly created position. Third, she may apply for a posted position, i.e. a job opening which otherwise would be filled by an external candidate. Finally, employees who are members of the Harvard Union of Clerical and Technical Workers ("the Union"), such as plaintiff, receive regular wage increases pursuant to a collective bargaining agreement between Harvard and the Union.

In May, 2018, plaintiff received a generally positive performance review. Her manager, Grace Galvin, stated that plaintiff had performed well in 2018, despite perhaps having been "spread too thin". Galvin professed that she

> look[ed] forward to seeing [plaintiff] take the lead on data coordination, build more relationships with external partners, and support our trial to success.

Near the end the year, Rucker and Galvin began discussing reclassification of Rucker's position. Ultimately, the two

collaborated in the preparation of a Job Review Form, an internal document submitted in support of reclassification. On that form, Galvin wrote that reclassification of Rucker's position was appropriate because Rucker was already performing many if not all of the duties expected of her in the reclassified role.

In March, 2019, Galvin submitted the Job Review Form to Elissa Brennan, Director of Human Resources and Recruitment Services at Harvard's School of Public Health. Galvin recommended that Rucker's position be reclassified to Project Coordinator II/Senior Project Coordinator at salary grade 55, and that her salary be increased to approximately $66,000 which would constitute a nearly 15% raise over her salary at the time. When asked by another Ariadne employee whether she was concerned that Harvard would inquire why the recommended amount was so high or how she had arrived at the figure, Galvin responded "better to start high[,] no?".

In May, 2019, Brennan informed Rucker that her position had been reclassified from a Grade 54 Project Coordinator I to a Grade 55 Project Coordinator II/Senior Coordinator, retroactive to March, 2019. Rucker's salary was increased to approximately $34 per hour for a 35-hour work week, or $61,000 per year, which constituted a raise of approximately 7% from her previous salary.

Rucker was disappointed that she did not receive a larger salary increase and suspected unfair treatment. At her deposition, she testified that she believed that 1) Galvin would not have requested an unrealistic raise on her behalf, 2) Galvin thought such a raise was realistic either because she had received a similar raise herself or procured one for another White employee she supervised and 3) other reclassified employees were receiving larger raises than she did, based on a conversation she had with Kizzy Scott, a Grants Manager at Ariadne.

In July, 2019, Ariadne held a whole-staff meeting ("the July, 2019 Meeting") concerning, among other things, promotion and reclassification. The parties agree that during the July, 2019 Meeting, Ariadne management explained that, going forward, Harvard and BWH would require specific reasons to justify a promotion. The parties also appear to agree that the expected effect of this change in policy was to reduce the rate of promotion and reclassification, although Rucker asserts that the policy was not applied evenly to Black and White employees.

The following month, plaintiff resigned her position. Shortly thereafter, Amber Weiseth, a member of Ariadne management who, like Rucker, was on the Delivery Decisions Initiative team and Kit Nichols, another senior Ariadne employee, each spoke with Rucker about potential opportunities

for promotion to a Project Manager position in their respective Ariadne divisions. (Those divisions were Team Birth and Serious Illness). Although Rucker took the weekend to reconsider her resignation, she testified that she ultimately confirmed it because funding for the Team Birth position was uncertain and working conditions in Serious Illness were reportedly unpleasant.

**B. Procedural History**

In October, 2019, plaintiff filed a charge of discrimination ("the Charge") with the Equal Employment Opportunity Commission ("the EEOC") and the Massachusetts Commission Against Discrimination ("the MCAD"), alleging that defendant

> denied [her] the opportunity for [job] reclassification in the appropriate time frame and salary which properly aligned with the awarded position because of [her] race.

Rucker contended that her White counterparts were promoted faster and received higher salaries than she did. She also asserted that Harvard "stifled" her career progression by requiring her to wait at least one year between promotions, a requirement allegedly not imposed upon White employees. In August, 2020, the EEOC dismissed Rucker's claims.

Rucker commenced this action in September, 2020, challenging the decision of the EEOC. In the complaint, she re-asserted allegations relating to her job reclassification

process and salary and stated, for the first time, a hostile work environment claim, more particularly that an Ariadne employee, Dr. Neel Shah, "fostered an environment of institutionalized racism". Harvard filed a motion to dismiss the complaint insofar as it alleged a hostile work environment which was allowed in February, 2021. It now moves for summary judgment on the remaining claims.

## II.  Motion for Summary Judgment

### A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

**B. Application**

### i. Discrimination claims

Rucker alleges that Harvard violated Title VII and Chapter 151B when it failed to promote and compensate her similarly to her White colleagues. Because she does not proffer direct evidence of discrimination, the Court considers her claims under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

The McDonnell Douglas analysis proceeds in three steps. Forsythe v. Wayfair Inc., 27 F.4th 67, 76 (1st Cir. 2022). First, plaintiff must adduce evidence sufficient to make a prima facie case of discrimination. Id. Then, Harvard must proffer a legitimate, non-discriminatory reason for the challenged action.

-8-

Id.  Finally, plaintiff must show that Harvard's stated reason, though facially legitimate, was merely a pretext for unlawful discrimination. Id.  Although the burden of production shifts back and forth during the McDonnell Douglas analysis, the ultimate burden of persuasion rests with plaintiff throughout. Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 19 n.1 (1st Cir. 1999) (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981)).

Assuming for the purpose of the present motion that Rucker has made a prima facie case of discrimination, the Court concludes that Harvard has rebutted it.  Documentary evidence—namely, the Job Review Form and the 2019 Revision—provides that reclassification of a position is appropriate where there has been a substantial change in the employee's duties and responsibilities.  Harvard asserts that, in accordance with its policies, Rucker's reclassification was determined by the pace of her professional development (as shown by, inter alia, her 2018 performance review), not racial bias, and that upon reclassification her pay was set in accordance with grade-level standards.  That "legitimate, non-discriminatory reason" is sufficient to discharge Harvard's intervening burden of production. Zampierollo-Rheinfeldt v. Ingersoll-Rand De P.R., Inc., 999 F.3d 37, 51 (1st Cir. 2021).

Turning, then, to pretext, Rucker argues that the non-discriminatory reason proffered by Harvard is belied by the faster rate of promotion of her White colleagues, their larger pay increases and testimony from several Brigham employees who worked at Ariadne.

None of those contentions withstands scrutiny. First, Rucker was reassigned at a pace at least commensurate with the employees whom the parties identify as comparators. Harvard has produced a list of 12 employees, anonymized as Employees A through L, who held the title "Coordinator" at either Grade 54 or 55 during Rucker's employment. Of those employees, two were, like Rucker, Project Coordinators at Grade 54. Neither was reclassified more quickly than Rucker: Employee D was not reclassified until approximately two years and nine months into her employment and Employee B was not reclassified during Rucker's time at Ariadne.

Broadening the pool of comparators to employees holding somewhat less analogous positions yields a similar conclusion. See Trs. of Health & Hosps. of Boston, Inc. v. Mass. Comm'n Against Discrimination, 871 N.E.2d 444, 450 (Mass. 2007) (noting that "a comparator's circumstances need not be identical to those of the complainant"); Velez v. Thermo King de P.R., Inc., 585 F.3d 441, 451 (1st Cir. 2009) (explaining that a comparator is appropriate if "a prudent person, looking objectively at the

-10-

incidents, would think them roughly equivalent and the protagonists similarly situated"). Employee E, who held the position of Staff Assistant III at Grade 53, was reclassified after approximately 18 months and Employee G, who held the position of Research Assistant III, a Grade 54 position, was reclassified after just over two years. Several employees were reclassified more quickly—Employee H, for instance, was reclassified from Digital Media Coordinator, Grade 53, to Digital Media Coordinator, Grade 54 after seven months and Employee F was reclassified from Coordinator I, a Grade 54 position, to Senior Operations Coordinator, a Grade 55 position, after one year—but others, such as Employees I through L, were not reclassified at all.

   Nor did plaintiff receive substandard compensation. While there is perhaps some initial appeal to the contention that her raise of approximately 7% upon reclassification was unduly low considering raises of 10% to 20% that Harvard had previously granted to reclassified White employees, it is ultimately unavailing. Throughout her employment, plaintiff was among the most highly compensated employees at her grade level. Harvard argues that, because Rucker was among the highest-compensated employees at her grade level, she could not have received a raise constituting a similarly high percentage of her salary without creating a significant disparity in compensation between

-11-

her and similarly situated colleagues—a disparity incompatible with Harvard's stated policies.  Plaintiff fails to offer any substantive rebuttal to that contention, or any evidence that her raise, in dollars (rather than percentage), was unusually low.  Her contention that Harvard had previously deviated from its compensation policies to the benefit of White employees does not advance beyond speculation.

In sum, there is little evidence of any meaningful disparity between the wages or rates of reclassification of plaintiff and her White colleagues.  Moreover, and dispositive of the discrimination claims, to the extent any such disparity exists, plaintiff adduces no evidence that it redounded to her detriment or was caused by any reason other than those proffered by Harvard.  As has been discussed, her position was reclassified at a rate comparable to her similarly situated colleagues, and she was paid more than most of them.  Deposition testimony from several former managers which she cites in support of her claim of racial bias does not in fact substantiate such a claim.

Finally, Rucker interposes several additional objections, each easily countermanded.

First, she argues that, regardless of the respective rates of reclassification, White employees received other promotions more quickly than she did, evincing the bias of her superiors.

Fatal to that contention, however, is the undisputed fact that Rucker did not apply to any posted positions during her time at Ariadne.

Second, she asserts that she was broadly denied opportunities for professional development, separate and apart from the failure to reclassify her position in a timely manner, but the evidence and argument offered on that issue is, in essence, a reprise of the one proffered concerning her purportedly belated reclassification and is no more persuasive for the change of context.

Third, she claims that Harvard constructively terminated her employment by failing to promote her at a rate commensurate with that enjoyed by her White colleagues.[2]  That argument is unavailing for the same reasons previously discussed.  Moreover, under Massachusetts law a failure to promote, without more, is an insufficient predicate for a constructive termination claim. Flint v. Boston, 113 N.E.3d 419, 427-28 (Mass. App. Ct. 2018); see also Tinkham v. Jenny Craig, 5 Mass. L. Rep. 296, 1996 Mass. Super. LEXIS 468, at *32-33 (Mass. Super. Apr. 15, 1996) (stating that "[t]he mere allegation of a failure to promote in and of itself is insufficient to support a constructive

---

[2] The Court has previously dismissed plaintiff's claim that she was constructively terminated as a result of a hostile work environment and considers her argument here only to the extent she contends that she was constructively terminated due to the failure of Harvard to reclassify her position.

-13-

discharge claim) (collecting cases); Contardo v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 753 F. Supp. 406, 411 (D. Mass. 1990) (holding that "[t]he defendant's failure to afford [plaintiff] an equal shot at some lucrative business . . . . was not career-ending").

### ii. Equal Pay Act claim

Rucker claims that Harvard violated the Equal Pay Act which prohibits disparate compensation for individuals of different genders who perform comparable work. M.G.L. c. 149, § 105A(b); see Gu v. Boston Police Dep't, 312 F.3d 6, 15 (1st Cir. 2002). She has not, however, substantively opposed Harvard's motion for summary judgment as to that claim. In any event, the record reflects that during plaintiff's employment, there were no male project coordinators and thus no appropriate comparators for the purpose of the Equal Pay Act. See Gu, 312 F.3d at 15 (citing Jancey v. School Comm'n of Everett, 658 N.E.2d 162, 167 (Mass. 1995). The few male employees identified by the parties performed substantially dissimilar work. Id.

**ORDER**

For the foregoing reasons, defendant's motion for summary judgment (Docket No. 26) is **ALLOWED**.

**So ordered.**

                                       /s/ Nathaniel M. Gorton
                                       Nathaniel M. Gorton
                                       United States District Judge

Dated:  August 12, 2022